Charles Jay SMITH

v.

**UNITED STATES of America.**

Civ. A. No. 72–238.

United States District Court,
W. D. Pennsylvania.

June 2, 1972.

**1316**

Charles Jay Smith, pro se.

Samuel J. Orr, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

1. The conviction of petitioner, and his codefendants, Archie and Washington, was affirmed on appeal. United States v. Archie, 452 F.2d 897 (3d Cir. 1971).

2. Transcript, March 23, 1970, hearing before Judge Sorg. Transcript, April 9, 1970, hearing before Judge Weber, at which it appeared he had $500 in the

## OPINION AND ORDER

MARSH, Chief Judge.

The petitioner, Charles Jay Smith, along with two codefendants (Archie and Washington), was convicted of bank robbery, 18 U.S.C. § 2113(a). A third codefendant (Parrotte) was acquitted.[1] The petitioner has moved to vacate sentence pursuant to 28 U.S.C. § 2255. The principal ground in support of the motion to vacate is the usual accusation, after conviction, of ineffective assistance of counsel.

■ Petitioner requests a hearing upon his motion under § 2255. The statute requires no hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief * * *." The transcripts and the files in this case are sufficient to test the petitioner's contentions. Thus, a hearing is not required. It is our opinion that the motion to vacate should be denied.

The petitioner alleges, and the record shows, that he apprised the court of the following matters prior to trial:[2]

1. That he sought to secure counsel of his own choice and had financial means to do so.

2. That appointed counsel was unprepared to give effective defense.

3. That appointed counsel had no prior experience in criminal procedures in federal court.

4. That the petitioner would consider defending himself and the court gave him 24 hours to accept counsel or represent himself with the assistance of the same counsel.

Because of these allegations, I held a full hearing and determined that his appointed counsel, Attorney Harry Swan-

bank in his mother's name. Hearing before me generally (R., pp. 16–30 and 54–67). Petitioner requested to represent himself (R., pp. 21–22, 30, 65); and after giving him overnight to think it over, he agreed to "go along with Mr. Swanger [his appointed counsel]" (R., p. 129).

ger, had sufficient time to prepare the case, was sufficiently experienced, and ready to go to trial. It appeared that Attorney Swanger had been a trial lawyer in the state courts for three years where he had been trying criminal cases for approximately a year. When Judge Weber appointed him to represent the petitioner, his name appeared on the list of approved lawyers. Attorney Swanger assured me that he was prepared to go to trial (R., pp. 27, 29). The case had been called for trial on March 23rd and continued; all three codefendants were ready for trial on April 22, 1970, and two of them had been in jail since January, 1970. The fact that petitioner had privately retained and paid Attorney Carl Blanchfield shows that he had sufficient time to retain counsel of his own choice and did so (R., pp. 31, 32). Attorney Blanchfield was summoned to court by me and it appeared that petitioner, his mother, and Attorney Blanchfield had agreed that petitioner should be represented in federal court by appointed counsel (R., pp. 54–57, 63–65). In these circumstances, I believe petitioner was engaging in unwarranted dilatory tactics, and, to a certainty, his complaint that counsel was forced on him is without substance.[3]

The record discloses that the petitioner's appointed counsel was fully prepared and had adequate time to and did interview petitioner, his witnesses, and the prosecuting authorities. He prepared motions, researched the law and conferred with the attorneys for the codefendants. His voucher certified that he spent 28 hours in this regard, including 13 hours consumed by interviews. In behalf of petitioner, he filed a motion for discovery and inspection and a motion for bill of particulars, which were effectively presented and argued. Also,

he made a motion to suppress codefendant Parrotte's confession; cross-examined prosecution witnesses who testified adversely to petitioner; and orally moved that the government produce exculpatory evidence and witnesses as required by United States v. Brady (R., pp. 70–71). He opened the case for petitioner and examined three alibi witnesses and the petitioner; presented a point for charge; made motions for judgment of acquittal at the close of the prosecution's evidence, at the close of all the evidence, and after verdict; made summation on behalf of petitioner; filed a motion for a new trial assigning thirteen grounds therefor; and prosecuted the appeal. In addition, appointed counsel represented petitioner at a lineup on April 15, 1970, and at his arraignment on April 16, 1970, before Judge Miller.

It was brought to my attention that petitioner had hepatitis when arrested on March 17, 1970 (R., p. 57). I instituted an investigation and it appeared that after his arrest, petitioner was sent to the jail hospital by the jail nurse for hepatitis (R., p. 60), but had been released on March 23rd. The guard (Bronyak) who had been escorting him to the federal court hearings on March 23rd, April 15th, 16th, and 22nd, stated that he had been told that petitioner's condition was not infectious (R., p. 62). Notwithstanding, I ordered the Assistant United States Attorney to investigate (R., pp. 62, 66). Accordingly, F.B.I. Agent Bria investigated and reported that petitioner was "no longer in a communicable state as far as the disease of hepatitis goes" (R., pp. 68–69).

At the hearings on March 23rd and April 9th, petitioner, a narcotic addict, made no complaint about feeling ill, or undergoing withdrawal symptoms.[4]

---

3. Attorney Swanger was requested to and agreed that if petitioner rejected him as appointed counsel, that he would nevertheless stand by and advise petitioner (R., p. 67).

4. At the sentencing hearing he admitted that he had been supporting a $50 a day narcotic habit. Petitioner was charged in the state court with violating the Dangerous Drug and Cosmetics Act under an assumed name. His retained counsel stated that petitioner was not only charged in the state court with a narcotic violation but also with two armed roberies (R., p. 56).

(Transcripts, March 23, 1970 and April 9, 1970.) At no time during the trial did petitioner complain about feeling ill or undergoing withdrawal symptoms. He appeared healthy and was alert to the conduct of his defense (see: R., pp. 239–243).

Allegations of fact which appear undisputed in the record with respect to the petitioner's claim of ineffective assistance of appointed counsel are:

5. He failed to object to Mr. Finley's identification testimony of codefendant Archie.

6. He did not move to suppress Finley's identification testimony of codefendant Archie.

■ No possible charge of ineffective assistance or incompetency could emanate from these alleged failures. On motions to suppress by codefendants, Archie and Washington,[5] the court held a Wade hearing (R., pp. 72–128) and found that Mr. Finley's in-court identification of the defendant, Archie, stemmed from an independent source, untainted by prior confrontations, and was admissible in evidence. Since Finley did not identify the petitioner as one of three men at the scene, any objection or further motion to suppress made by appointed counsel on behalf of the petitioner would have been a futile gesture.

7. He did not move to sever, especially in view of the "heavy and direct evidence" against codefendant, Archie, by Finley and codefendant, Parrotte.

■■ Counsel for Washington moved to sever his trial from that of the other defendants because of feared misconduct by Archie (R., pp. 42–45). The motion was denied. None of the other defendants moved to sever. A trial involving a bank robbery perpetrated by several persons is ordinarily not severed and the accused tried separately because the evidence against one of them is "heavy and direct". *Cf.* United States v. Jordan, 399 F.2d 610, 615 (2d Cir. 1968). If petitioner's counsel had made a motion to sever on that ground, it most certainly would have been denied. The failure of appointed counsel to make such a dubious motion does not justify the granting of the motion to vacate.

8. He failed to take exception to the charge, "yet later counsel appealed that 'Trial Judge charge was in error' ".

None of the other experienced counsel, one of them a former Assistant United States Attorney, took exception to the charge. Although not perfect, it was found to be free from plain error by the Court of Appeals.[6] As stated in Moore v. United States, 432 F.2d 730, 736–737 (3d Cir. 1970):

"A retrospective examination of a lawyer's representation to determine whether it was free from any error would exact a higher measure of competency than the prevailing standard. Perfection is hardly attainable and certainly is not the general rule, especially in professional work where intuitive judgments and spontaneous decisions are often required in varying circumstances. The artistry of the advocate is difficult to judge retrospectively because the elements influencing judgment usually cannot be captured on the record. The kaleidoscopic range of possibilities often seems limitless, and it is proverbial that the finest ideas emerge on the way back from the courthouse. * * Review may disclose failures at the trial. All these are matters which will inform the judgment on a retrospective inquiry whether counsel adequately performed his duty. But since what is required is normal and not exceptional representation, there is room for the realization that it

---

5. Washington joined in the motion to suppress (R., p. 89), but waived cross-examination of Finley when it was stipulated by the prosecution that Finley would not identify Washington as one of the defendants who was at the scene of the crime (R., p. 114).

6. See f. n. 1, supra.

would be difficult to find a case where even the ablest and most experienced trial lawyer would be completely satisfied after a searching reexamination of his conduct of a case."

*Cf.* United States ex rel. Darcy v. Handy, 203 F.2d 407, 427 (3d Cir. 1953).

██ The failure of petitioner's counsel to take exception to the charge, in my opinion, does not justify the accusation of ineffective assistance of counsel.

9. He failed to object to illegal and excessive sentence.

██ Over two months elapsed before the defendants were sentenced. At the sentencing hearing, the court was of the erroneous impression that petitioner had been found guilty of bank robbery, § 2113(a), and jeopardizing lives with a dangerous weapon, § 2113(d). Only the codefendant, Archie, was convicted of both counts. Petitioner, an admitted narcotic addict, was sentenced for treatment and supervision pursuant to 18 U.S.C. § 5010(c) for a period of 25 years or until discharged by the Youth Correction Division of the Board of Parole as provided by 18 U.S.C. § 5017(d) with the hope that he could be cured of his addiction and observed and supervised for a long time after his release on parole. The sentence was corrected upon *pro se* motion on January 26, 1972, whereby treatment and supervision pursuant to 18 U.S.C. § 5010(c) was reduced to an indeterminate period of 15 years. Since the sentence had nothing to do with the trial, I do not think counsel's failure to object to the sentence is sufficient to vacate the reduced sentence because of ineffective assistance of counsel.

Appointed counsel met the standard of normal competency.

██ In view of the record, it can be confidently asserted that petitioner's trial was not a sham, farce or mockery as the motion suggests. The quality of appointed counsel's advocacy was certainly not such as to constitute a constitutional deprivation. None of the specified failures amounted to unconsti-tutional inadequacy of appointed counsel. The record is convincing that appointed counsel's representation of petitioner was zealous, faithful and more than equal to the standard of "normal competency" mandated by the Court of Appeals in Moore v. United States, *supra*. Except for the court's error at Item 9, *supra*, none of the alleged failures of counsel was shown to be prejudicial to the petitioner. Nothing petitioner's counsel failed to do in the context of the whole proceedings would justify a finding of ineffective assistance of counsel.

Alleged comment refuted by trial transcript.

██ Petitioner contends that the trial judge at the close of his charge said:

"I would like to remind the jurors that more and more Banks are being robbed in the Pittsburgh area everday [sic]."

Since this contention is refuted by the trial transcript, a hearing is not required. No such statement was made by me at the close of the charge in the presence of the jury or at any other time.

An appropriate order will be entered.